Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| **JOSÉ ABNER SÁNCHEZ ROA**<br><br>Recurrente<br><br>v.<br><br>**JUNTA DE LIBERTAD BAJO PALABRA**<br><br>Recurridos | KLRA202500054 | **REVISIÓN ADMINISTRATIVA** Procedente de la Junta de Libertad Bajo Palabra<br><br>**Núm. de Caso:** 104707<br>**Confinado Núm.** P676-18322<br><br>Sobre:<br>**Consideración Libertad Bajo Palabra** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de marzo de 2025.

Comparece ante nos, José Abner Sánchez Roa, en adelante, Sánchez Roa o recurrente, solicitando que revisemos la *"Resolución"* de la Junta de Libertad Bajo Palabra, en adelante, Junta o recurrido, notificada el 18 de noviembre de 2024. Mediante esta, la Junta determinó que el recurrente *no cualifica para el beneficio de estar en libertad bajo palabra.*

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

**I.**

Sánchez Roa se encuentra recluido en la Institución Correccional de Guerrero en el Municipio de Aguadilla, cumpliendo una extensa condena a expirarse en el año 2060.[1] En el año 2020, la recurrida comenzó el proceso para auscultar la posibilidad de que el recurrente se beneficie del privilegio de libertad bajo palabra.[2] El

---

[1] Apéndice del recurso, pág. 9.
[2] *Id.*, pág. 1.

20 de junio de 2023, la Junta determinó solicitar información adicional al Departamento de Corrección y Rehabilitación, en adelante, DCR, antes de tomar su decisión respecto a Sánchez Roa.[3]

Completados los procesos de rigor, la recurrida notificó una *"Resolución"* el 19 de octubre de 2023.[4] En ella, concluyó que el recurrente no cualifica para los mencionados beneficios. Dispuso además, que su caso sería reevaluado en el mes de junio del año 2024.

Surge de los documentos que obran en autos, que Sánchez Roa fue evaluado por al menos dos (2) profesionales en el campo de la salud mental.[5] La Sección del Programa de Evaluación y Asesoramiento, en adelante, SPEA, completó una evaluación del recurrente el 27 de junio de 2024, y recomendó que este recibiera tratamiento psicológico.[6] Sin embargo, la psicóloga clínica del DCR en la institución carcelaria de Guerrero indicó que Sánchez Roa no necesitaba recibir servicios de naturaleza psicológica.[7]

Así las cosas, en una segunda consideración, la Junta notificó otra *"Resolución"* el 18 de noviembre de 2024. En esta, de igual forma, declinó ofrecerle al recurrente el privilegio de libertad bajo palabra.[8] La recurrida presentó los hechos que la movieron a negar el mismo, como por ejemplo, que el hogar propuesto no era viable por la cercanía a las partes perjudicadas, la evaluación de SPEA y que no cuenta con oferta de empleo.[9]

Inconforme, Sánchez Roa presentó una *"Moción de Reconsideración"* el 9 de diciembre de 2024 ante la Junta. Transcurridos, sin respuesta, los quince (15) días prescritos para que la agencia se expresara, Sánchez Roa recurrió ante esta Curia

---

[3] Apéndice del recurso, pág. 1.
[4] *Id.*, págs. 1 y 5.
[5] *Id.*, pág. 6.
[6] *Id.*, págs. 6 y 9.
[7] *Id.*, pág. 7.
[8] *Id.*, pág. 9.
[9] *Id.*

el 22 de enero de 2025. En su recurso, planteó el siguiente señalamiento de error:

> ERRÓ LA JUNTA DE LIBERTAD BAJO PALABRA AL DENEGAR LA SOLICITUD DEL PETICIONARIO - RECURRENTE DE CONCEDER LA LIBERTAD BAJO PALABRA, ACTUANDO DE MANERA ARBITRARIA Y CAPRICHOSA, EN VIOLACIÓN AL DERECHO DE REHABILITACION DEL CONFINADO Y DEL DEBIDO PROCESO DE LEY.

Mediante *"Resolución"* del 27 de enero de 2025, le concedimos a la Junta hasta el 21 de febrero de 2025 para presentar su posición en cuanto al recurso, conforme lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. Luego de una breve prórroga, la recurrida compareció ante nos el 13 de marzo de 2025, mediante *"Escrito en Cumplimiento de Resolución"*.

Perfeccionado el recurso que nos ocupa, procedemos a expresarnos.

## II.

### A. Revisión Judicial de Determinaciones Administrativas

El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003, 4 LPRA sec. 24y(c), otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas. *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014). La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable. *Jusino Rodríguez v. Junta de Retiro*, 2024 TSPR 138, 215 DPR ___ (2024); *Simpson, Passalacqua v. Quiros, Betances,* 2024 TSPR 64, 214 DPR ___ (2024); *Pérez López v. Dpto. Corrección*, 208 DPR 656, 672 (2022);

*Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011). *Empresas Ferré v. A.R.Pe.*, 172 DPR 254, 264 (2007). Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina. *Jusino Rodríguez v. Junta de Retiro*, supra; *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley Núm. 38 de 30 de junio de 2017, 3 LPRA 9601, *et seq.,* establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. En lo pertinente al caso que nos ocupa, la Sección 4.2 de la LPAUG, supra, sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión.
> […]
>
> *Simpson, Passalacqua v. Quirós, Betances*, supra.

Como es sabido, las determinaciones de agencias administrativas gozan de una presunción de corrección. *Jusino Rodríguez v. Junta de Retiro*, supra; *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. Bella Retail Group*, 2024 TSPR 70, 213 DPR ___ (2024);

*Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *EG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010).

Las decisiones administrativas deben ser respetadas, a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente. *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69, 77-78 (2004). Igualmente, el foro judicial deberá analizar si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba y; 3) las conclusiones de derecho del organismo administrativo son correctas. *Otero Rivera v. Bella Retail Group*, supra; *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

La Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." Con relación a la referida sección, el Tribunal Supremo de Puerto Rico ha establecido y reiterado que la revisión judicial de un acto administrativo está limitada a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser sostenida, ***a menos que se demuestre que es arbitraria, caprichosa o manifiestamente errónea***. *Otero Rivera*

*v. Bella Retail Group*, supra; *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008); *Ramírez v. Depto. de Salud,* 147 DPR 901 (1999); *Rivera v. A.&C. Development Corp.,* 144 DPR 450 (1997). El concepto de evidencia sustancial consiste en "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012).

Corresponde al Tribunal de Apelaciones analizar la evidencia en su totalidad, tanto la que sostenga la decisión administrativa como la que menoscaba el peso que la agencia adjudicó. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997). En el caso en que haya un conflicto razonable sobre la evidencia que consta en el expediente administrativo, debe respetarse la apreciación de la agencia. *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

Finalmente, cuando una parte se propone retar las determinaciones de una agencia, nuestro ordenamiento jurídico requiere que este debe demostrar que las mismas no están correctamente fundamentadas. Es por esto, que deberá ofrecerle al foro revisor prueba que aminore o menoscabe la evidencia que obre en el expediente administrativo. *Otero v. Toyota,* 163 DPR 716, 728 (2005).

### B. Junta de Libertad Bajo Palabra

La Constitución de Puerto Rico establece como política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Artículo VI, Sección 19, Const. PR, LPRA Tomo I. *Lebrón Laureano v. Dpto. Corrección,* 209 DPR 489, 498-499 (2022). A esos fines existe la Junta, regulada, a su vez, por la Ley Número 118 de 22 de Julio de 1974, en adelante,

Ley de la Junta, 4 LPRA sec. 1501, *et seq.* El sistema de libertad bajo palabra permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad. *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987). A tales efectos, tiene el propósito principal de ayudar a las personas confinadas a reintegrarse a la sociedad en forma positiva tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta. Artículo 3 de la Ley de la Junta, supra, sec. 1503.

El Artículo 3(a)(6) de la precitada Ley dispone que para determinar si conceder el privilegio de libertad bajo palabra, la Junta tendrá ante sí toda información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado. Ley de la Junta, supra, sec. 1503. A esos fines, el Artículo XIV de la Sección 14.1(A) del Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232 de 18 de noviembre de 2020, establece que "[l]a Junta tomará su determinación a base de la preponderancia de la prueba, a la luz de la prueba presentada durante la vista y la totalidad del expediente del caso". A su vez, "evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión". Artículo X, Sección 10.1(A), Reglamento de la Junta de Libertad Bajo Palabra, supra.

La Junta es responsable de considerar el "mejor interés de la sociedad" y concederá los privilegios de libertad que está facultada para otorgar "cuando las circunstancias presentes [le] permitan [...] creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". Artículo 3(a) de la Ley de la Junta, supra, sec. 1503. Además, la referida Ley dispone los siguientes

criterios que deberá evaluar la Junta para determinar la elegibilidad de los que solicitan la libertad bajo palabra:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
>
> (4) *La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado*.
>
> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
>
> (6) La edad del confinado.
>
> (7) El o los tratamientos para condiciones de salud que reciba el confinado.
>
> (8) La opinión de la víctima.
>
> (9) *Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado*.
>
> (10) *Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra*.
>
> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta *tendrá la discreción* para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.
>
> Artículo 3-D Ley de la Junta, supra, sec. 1503d.
> (Énfasis suplido).

Finalmente, huelga mencionar que por su naturaleza estatutaria, y lo establecido en nuestra jurisprudencia, los beneficios de libertad bajo palabra *no son derechos que se puedan exigir,* sino que se trata de *privilegios* cuya concesión y administración son puramente discrecionales y recaen en la Junta. Estos son privilegios concebidos para ayudar a los convictos en su proceso de rehabilitación y se considera que mientras se disfruta de

estos beneficios, la persona está técnicamente en reclusión. *Pueblo v. Negrón Caldero,* 157 DPR 413 (2002); *Pueblo v. Martínez Rivera,* 99 DPR 568, 575 (1971).

**III.**

Sánchez Roa recurre ante este Foro para que revoquemos la determinación de la Junta que denegó su solicitud para recibir el beneficio de completar su condena en libertad bajo palabra. Arguye que la recurrida fue caprichosa, arbitraria y violentó su derecho a la rehabilitación con su decisión. *No le asiste razón.*

Las decisiones que tome una entidad administrativa gozan de una presunción de corrección. Por ello, según la norma que rige nuestro ordenamiento jurídico, previamente esbozada, espera de este Tribunal, como regla general, deferencia ante las determinaciones de agencias administrativas. Sin embargo, esta expectativa no es absoluta, puesto que en ciertas instancias, en donde exista o se demuestre abuso de discreción, error o parcialidad, ostentamos la facultad de intervenir en determinaciones de esta naturaleza. Sin embargo, la parte que dispute una decisión administrativa tiene el peso de probar que esta fue errada. Justipreciamos que el recurrente no logró hacerlo.

La Junta es una entidad que carga una responsabilidad pública de gran envergadura, puesto que sus decisiones tienen el potencial de incidir con el orden y la paz social. A esto se contrapone el derecho a la rehabilitación, a cuyo objetivo deben estar enmarcados los esfuerzos de las agencias administrativas que atiendan asuntos relevantes a las personas encarceladas. Por eso, luego de estudiar con justo detenimiento el expediente que obra en autos, *concluimos que la Junta no actuó de manera caprichosa o arbitraria.*

Los deberes de la Junta, a la hora de evaluar a un confinado, están enmarcados con claridad en los estatutos que regulan sus funciones. Como vimos, algunos de los asuntos que tiene que considerar la recurrida en estos procesos es el lugar en donde se propone vivir el confinado, sus planes de trabajo y los expedientes sociales, penales y médicos. Surge del expediente que, aunque en conflicto con otra opinión, la SPEA recomendó que Sánchez Roa reciba servicios de salud mental. Además, y con relación a su plan de salida, el recurrente no cuenta con propuesta de hogar ni oferta de empleo viable.

Reconocemos que Sánchez Roa goza de un expediente conductual positivo, tanto así que reside en custodia mínima y no tiene querellas en su contra. Sin embargo, la Junta debe hacer un análisis integral de la viabilidad del confinado para recibir los beneficios de este privilegio.

**IV.**

Por los fundamentos que anteceden, *confirmamos la "Resolución" recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones